UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SHAWNDELL EVERSON,

                Petitioner,

v.                                             9:22-CV-0095
                                                    (LEK/ML)

JULIA WOLCOTT,

                Respondent.

---

APPEARANCES:                                        OF COUNSEL:

SHAWNDELL EVERSON
Petitioner, pro se
11-B-0700
Attica Correctional Facility
Box 149
Attica, NY 14011

HON. LETITIA JAMES                            PRISCILLA I. STEWARD, ESQ.
Attorney for Respondent                        Ass't Attorney General
New York State Attorney General
The Capitol
Albany, New York 12224

MIROSLAV LOVRIC
United States Magistrate Judge

**REPORT-RECOMMENDATION and ORDER**

**I.    INTRODUCTION**

       Petitioner Shawndell Everson seeks federal habeas relief pursuant to 28 U.S.C. §

2254. Dkt. No. 1, Petition ("Pet.").[1]

       On February 7, 2022, the Court directed petitioner to file an affirmation explaining why

---

[1] For the sake of clarity, citations to petitioner's filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

the statute of limitations should not bar his petition. Dkt. No. 2, Decision and Order ("February Order"). In compliance with the February Order, petitioner timely filed said affirmation. Dkt. No. 3, Affirmation ("Aff."). The Court directed respondent to answer the petition. Dkt. No. 4, Decision and Order ("March Order").

Instead, respondent requested, and was granted, permission to file a motion to dismiss. Dkt. No. 10, Motion; Dkt. No. 11, State Court Records; Dkt. No. 12, Text Order. Petitioner filed a response in opposition to the motion. Dkt. No. 13; Dkt. No. 14.

For the reasons stated below, it is recommended that respondent's motion to dismiss be denied and that respondent's shall have sixty (60) days leave to file an answer addressing the merits of the petition.

## II.     PROCEDURAL HISTORY

Petitioner challenges a 2011 judgment of conviction in Onondaga County, upon a jury verdict, of two counts of first degree robbery, one count of first degree burglary, fourth degree conspiracy, and various other charges related to the possession or sale of guns and drugs. Pet. at 1-2; *People v. Everson*, 158 A.D.3d 1119, 1120 (4th Dep't 2018). The New York State Supreme Court, Appellate Division, Fourth Department, affirmed the judgment of conviction, and ultimately, on July 31, 2018, the New York Court of Appeals denied leave to appeal. Pet. at 2-4; *see also, Everson*, 158 A.D.3d at 1123, *reargument denied*, 160 A.D.3d 1506 (4th Dep't 2018), *lv. to appeal denied,* 31 N.Y.3d 1081 (2018), *reconsideration denied* 31 N.Y.3d 1147 (2018). Petitioner applied for a writ of certiorari which, on February 25, 2019, the United States Supreme Court denied. Pet. at 4; *Everson v. New York*, 139 S. Ct. 1269 (2019); *see also* Dkt. No. 11 at 34.

Petitioner also contends that on June 14, 2014, he filed a 440 motion in Onondaga County Court. Pet. at 4. On September 28, 2015, the County Court denied the motion. *Id.;* Dkt. No. 11 at 1-27. Petitioner sought leave to appeal and, on March 3, 2016, the Fourth Department granted his application. Dkt. No. 11 at 28-29. The Fourth Department consolidated the appeal of petitioner's 440 motion with his direct appeal of his criminal conviction; therefore, the appeal of the 440 motion was also denied on February 2, 2018. Dkt. No. 11 at 30-33; *see also See People v. Everson*, 158 A.D.3d 1123, 1123 (4th Dep't 2018) (explaining that petitioner's 440 motion was subsumed into the analysis and holding of *Everson*, 158 A.D.2d 1123). Petitioner sought reconsideration from the Court of Appeals, which was denied on May 31, 3018. *Id.* at 5-6.

Petitioner then filed a second 440 motion on December 19, 2019. Dkt. No. 11 at 35-50; *see also Everson v. Noeth*, No. 9:20-CV-0084 (DNH/CFH), 2020 WL 950284, at *1 (N.D.N.Y. Feb. 27, 2020) ("*Everson I*"). Petitioner applied for leave to appeal which was denied by the Fourth Department on November 5, 2021. Dkt. No. 11 at 51.[2]

On July 16, 2021, petitioner moved to renew his second 440 motion, pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") § 2221. Dkt. No. 13-1 at 22-43. Petitioner argues "that trial counsel was ineffective and misapprehended [his] prior criminal history, which in turn led the People to not extend a favorable plea offer to which the [petitioner] now claims he would have accepted." *Id.* at 45. On October 21, 2021, the Onondaga County Court denied petitioner's motion. *Id.* at 44-48. Specifically, the court held that petitioner did

---

[2] Petitioner previously filed a habeas petition in this Court, challenging the same conviction, which was ultimately dismissed without prejudice and with a right to renew once petitioner had fully exhausted his state court remedies, namely this second 440 motion. *Everson v. Noeth*, No. 9:20-CV-0084 (DNH/CFH), 2020 WL 950284 (N.D.N.Y. Feb. 27, 2020) ("*Everson I*").

3

> not offer[] a reasonable justification for the failure to provide [the new documents] as part of the underlying motion. Moreover, the [c]ourt f[ou]nd[] that the additional documentation ha[d] nothing to do with the [petitioner's] guilt or innocence, would not in any way have changed the nature of plea negotiations, and does not show that the [petitioner] was amendable to accepting a plea offer. Accordingly, the materials now offered would not have changed th[e c]ourt's prior determination.

*Id.* at 48.  Petitioner affirms that, on October 23, 2021, he filed an application for leave to appeal the denial of his motion to renew.  Dkt. No. 14 at 3-12.  However, petitioner does not provide, nor could the Court find through its own independent research, a disposition to the application.

### III.  THE PETITION

Petitioner contends that he is entitled to federal habeas relief because (1) he was subjected to a "[p]attern of Sixth Amendment Public Trial Infringment's [*sic*]," whereby, on five instances, individuals were unlawfully ejected or precluded from entering the courtroom, Pet. at 6-9; (2) his trial counsel was constitutionally ineffective, *id.* at 9-11, 22-23; (3) there was judicial bias, *id.* at 11-14; (4) petitioner experienced "[d]eprivation of counsel of [his] choice [and r]easonable adjournment," *id.* at 14-16; (5) petitioner's indictments were defective and, therefore, the court lacked jurisdiction over his case, *id.* at 17-19; (6) there was prosecutorial misconduct, *id.* at 19-20; and (7) Counts 17-19 were not supported by legally sufficient evidence, *id.* at 20-22.  For a complete statement of petitioner's claims, reference is made to the petition.

In the February Order, this Court noted that the petition appeared untimely. Specifically, petitioner declared that the petition had been placed in the prison mailing system on December 31, 2021; however, the petition indicated that it was executed almost a year

4

earlier on January 31, 2021. February Order at 5. The Court surmised that it was more likely petitioner made an inadvertent clerical mistake and that the petition was actually signed and deposited into the facility mail on January 31, 2022. *Id.* at 6.

Petitioner timely filed an affirmation asserting that the Court's suppositions were incorrect and that the date his petition was entered into the facility's mail system was December 20, 2021. Aff. at 3-4. This is illustrated by petitioner's affidavit of service – notarized by an independent third party on December 20, 2021, although incorrectly dated December 31, 2021– and his Disbursement Request – also dated December 20, 2021, and signed and dated as approved by someone in the source area and business office. *Id.* at 6, 8. Petitioner explained, without any other amplifying detail, that any other inconsistencies were mistakes or oversights. *Id.* at 3-4.

Respondents moved to dismiss the petition arguing that it was untimely because it was deposited into the prison mail system later than December 20, 2021, when petitioner contends it was submitted. *See e.g.* Dkt. No. 10. Specifically, the Institution Steward explained that (1) inmates can keep disbursement forms in their cell; (2) inmates often date their disbursement forms well in advance of presenting them to the Business Office for processing; (3) before a disbursement form can be processed it must be verified in the form of a signature from the assigned corrections officer and hall captain; and (4) once properly verified, it can take up to ten (10) business days to disburse the approved payments. Dkt. No. 10-2 at 2. The Steward surmised that when petitioner's form "was first received, someone in the business office affixed a stamp stating , 'Need Source Area & Hall Captain Stamp.' That stamp indicates that when the package arrived in the business office, it lacked the required indicia of verification." *Id.* at 2-3. The delay was caused, as proffered by the

5

Corrections Officer working that day, by petitioner "incorrectly put[ting his] disbursement request form in the mailbag instead of leaving it on the ledge of his cell." Dkt. No. 10-3 at 2. The form, to which the Corrections Officer was referring, is located in the State Court Record. Dkt. No. 11 at 53. Like the disbursement request submitted by petitioner in support of his affidavit, this form also is dated December 20, 2021, has signatures from the source area of January 19, 2022, and the hall captain of January 25, 2022; however, it also has two stamps. *Id.* The first indicated that the form "Need[ed] Source Area & Hall Captain Stamp" and the second, placed on top of the first, said "A Inmate Identification Verified" with a second signature from the Hall Captain. *Id.*

Petitioner filed a response in opposition to the motion. Dkt. No. 13. Petitioner made two arguments. First, petitioner contended that his petition was timely filed, on December 20, 2021, and that the mail was otherwise delayed by the facility. *Id.* at 2-7. In support of that contention, petitioner attaches affidavits from other inmates, including proof of an issue with delayed mail that was successfully grieved at that same facility, outlining the shortcomings with the facility mail system. Dkt. No. 13-1 at 2-17. Petitioner does not contest the procedure which was outlined by the Steward and Corrections Officer, only "that those referenced procedure[]s, here particularly, are followed consistently enough, or efficiently enough to bar [petitioner] final constitutional review of []his conviction." Dkt. No. 13 at 4. Petitioner represented that he never received his disbursement form, or the petition, back into his possession after submitting it into the facility mail system on December 20, 2021. *Id.* at 4-5.

Second, petitioner contends that he is entitled to equitable tolling because he has demonstrated a "purposeful[] pursuit [to] redress . . . the violation's to [his] constitutional . . .

6

rights continuously throughout [his] incarceration." Dkt. No. 13 at 7. Petitioner points to his motion to renew his second 440 motion as an additional filing which should toll his limitations period. *Id.* at 7-9.

## IV. DISCUSSION

### A. Standard of Review

Respondent moves to dismiss the petition, pursuant to Fed. R. Civ. P. 12(b)(6), on the ground that it fails to state a claim upon which habeas corpus relief may be granted. Dkt. No. 10. Specifically, respondent contends that the petition is untimely, based upon when the petition was placed in the facility's mail system, and that tolling does not save the action. Petitioner disagrees.

"Motions to dismiss habeas petitions on procedural grounds pursuant to Rule 12(b)(6) are not inconsistent with the Habeas Rules, given the wide discretion afforded district judges in the disposition of habeas petitions." *Williams v. Breslin*, 274 F. Supp. 2d 421, 424-25 (S.D.N.Y. 2003). Dismissal of an action "is proper only where it appears beyond doubt that the [petitioner] can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 425 (citing cases). "[T]he Court must accept all well-pleaded factual allegations in the Petition as true and draw[] all reasonable inferences in favor of the petitioner . . . [and b]ecause [petitioner] is proceeding pro se, his petition must be read liberally and should be interpreted to raise the strongest arguments it suggests." *Id.* (internal quotation marks and citations omitted).

### B. Timeliness

#### 1. One Year Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted on

7

April 24, 1996, established a one-year statute of limitations for prisoners to seek federal review of their state court criminal convictions. 28 U.S.C. § 2244(d)(1). The one-year period generally begins to run from the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review. 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 & n.9 (2012).[3]

For purposes of section 2244, a state conviction becomes "final" when the United States Supreme Court denies an application for a writ of certiorari or when the time to seek certiorari has expired, which is ninety days after the date on which the highest court in the state has completed direct review of the case. *Gonzalez*, 565 U.S. at 150; *Saunders v. Senkowski*, 587 F.3d 543, 547-49 (2d Cir. 2009).

Here, petitioner's conviction became final on February 25, 2019, when his writ of certiorari was denied. 28 U.S.C. § 2244(d)(1)(A); *Gonzalez*, 565 U.S. at 149-50 & n.9. Therefore, petitioner had until February 25, 2020, to timely file the instant petition. The petition, purportedly placed in the mail in or around December of 2021 or January of 2022, was filed somewhere between one year and nine or ten months too late.[4]

### 2.     Statutory Tolling

The one-year limitation period under AEDPA is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or

---

[3] Other dates from which the limitations period may start running are the date on which an unconstitutional, state-created impediment to filing a habeas petition is removed, the date on which the constitutional right on which the petitioner bases his habeas application was initially recognized by the Supreme Court, if the right was newly recognized and made retroactively applicable, or the date on which the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence (newly discovered evidence). 28 U.S.C. § 2244(d)(1)(B)-(D). None of the bases for a later date upon which the statute of limitations could have begun to run appear to apply in this case.

[4] Under the prison "mailbox rule," a petitioner's application is deemed filed on the date he delivers it to the prison authorities for mailing. *Houston v. Lack*, 487 U.S. 266, 270 (1988)

claim is pending." 28 U.S.C. § 2244(d)(2); *Saunders*, 587 F.3d at 548. The tolling provision "excludes time during which properly filed state relief applications are pending, but does not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam). The tolling provision excludes from the limitations period only the time that the state relief application remained undecided, including the time during which an appeal from the denial of the motion was taken. *Saunders*, 587 F.3d at 548; *Smith*, 208 F.2d at 16.

The statute of limitations will be statutorily tolled while petitioner's properly filed collateral attacks were pending. Petitioner's first 440 motion was decided before his conviction became final and the limitations period began to run; therefore, it cannot be used for tolling purposes. *See Fernandez v. Artuz*, 402 F.3d 111, 116 (2d Cir. 2005) ("To toll the AEDPA statute of limitations, the state petition must be . . . pending during the tolling period.") (internal quotation marks omitted).

Petitioner's second 440 motion was filed on December 19, 2019, after 297 days of the limitations period had run. Statutory tolling applied for the time which the second 440 motion was pending, from December 19, 2019, to November 5, 2021, when the appellate division denied petitioner's application for leave to appeal. Petitioner had sixty-eight (68) days left in the limitations period.

On July 16, 2021, petitioner moved to renew his second 440 motion, pursuant to New York Civil Practice Law and Rules § 2221, and his motion to renew was denied in a Decision dated October 13, 2021. Dkt. No. 13-1 at 22-43 (motion to renew); *Id.* at 44-48

9

(Onondaga County Court decision denying motion).[5]

> [A] motion for leave to renew a Section 440.10 motion pursuant to Section 2221(e) of the C.P.L.R. tolls the AEDPA Limitations Period when it is properly filed. But unlike a motion for leave to reargue, New York law "does not impose a time limit for making a motion for leave to renew[.]

*Smalls v. Smith*, No. 1:05-CV-5182, 2009 WL 2902516, at *8 (S.D.N.Y. Sept. 10, 2009) (citations omitted). As previously discussed, the state court denied the motion because (1) petitioner failed to offer a reasonable justification for not providing the allegedly new documents with his second 440 motion and (2) even considering the materials, their content would not have changed the state court's previous determination denying the second 440 motion. Dkt. No. 13-1 at 48.

> Therefore, although petitioner's motion to renew . . . was ultimately dismissed, it was properly filed for the purposes of tolling because it was neither facially defective, nor did it fail to comply with the procedural requirements of filing a motion to renew; rather, it was dismissed because petitioner failed to satisfy the three substantive statutory requirements in C.P.L.R. § 2221(e) as to entitle him to renewal.

*Smalls*, 2009 WL 2902516, at *8 (internal quotation marks and citations omitted). Accordingly, to petitioner's point, tolling does apply. Unfortunately for petitioner, that tolling period coincided with the tolling which occurred while petitioner was appealing the denial of his 440 motion.

---

[5] Section 2221(e) provides that
> [a] motion for leave to renew: 1. shall be identified specifically as such; 2. shall be based upon new facts not offered on the prior motion that would change the prior determination or shall demonstrate that there has been a change in the law that would change the prior determination; and 3. shall contain reasonable justification for the failure to present such facts on the prior motion.

N.Y. CIV. PRAC. L. & R. 2221(e)(1)-(3). "A motion for renewal is, of course, properly made to the motion court (CPLR 2221) to draw its attention to material facts which, although extant at the time of the original motion, were not then known to the party seeking renewal and, consequently, were not placed before the court." *Bradley v. LaClair*, 599 F. Supp. 2d 395, 404 (W.D.N.Y. 2009).

Petitioner argues that he has an additional thirty (30) days of tolling to add to this calculation "because C.P.L.R. 2221 Renewal Motion's are appealable[.]" Dkt. No. 13 at 8. Moreover, petitioner contends that he timely filed such an application seeking permission to appeal. Dkt. No. 14 at 3-12. However, petitioner is partially incorrect "because an appeal from a County Court is not authorized as of right[.]" *Smalls*, 2009 WL 2902516, at *9. "Absent that permission, further appellate review in unavailable under New York State's procedures." *Dean v. Noeth*, No. 6:18-CV-6648, 2022 WL 2974034, at *11 (W.D.N.Y. July 27, 2022) (internal quotation marks and citations omitted). Accordingly, even if petitioner filed an application for leave to appeal, tolling would only be proper if the Appellate Division granted the application. At present, the Court cannot determine whether there should be any additional statutory tolling period for the second 440 motion after the Appellate Division's November 5, 2021 decision.

In the event no further tolling applies, the petition would have to be filed on or before January 12, 2022, to be timely.

### 3. Equitable Tolling

AEDPA's one-year statute of limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010) (citing, *inter alia*, *Smith* 208 F.3d at 17). The Second Circuit has "set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011). A petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008).

> The courts have tolled the statute in rare and exceptional circumstances, such as instances of egregious attorney misconduct, the intentional confiscation of legal papers by prison authorities, serious physical or mental illness which prevents the petitioner from filing, or where a petitioner, through no fault of his own, first learns of the outcome of a final appeal after the time for seeking habeas has expired.

*Garcia v. Portuondo*, 334 F. Supp. 2d 446, 458-59 (S.D.N.Y. 2004) (internal quotation marks and citations omitted).

To make the requisite showing, a petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing[.]" *Rodriguez*, 2015 WL 5968837, at *6 (quoting *Hizbullahankhamon v. Walker,* 255 F.3d 65, 75 (2d Cir. 2001)). Further, a petitioner must establish that he "acted with reasonable diligence throughout the period he seeks to toll." *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004). "The link of causation is broken if the person seeking equitable tolling has not exercised reasonable diligence." *Rodriguez,* 2015 WL 5968837, at *6 (citing *Barrett v. United States*, 961 F. Supp. 2d 403, 408 (D. Conn. 2013)); *see also Hizbullahankhamon,* 255 F.3d at 75; (noting that causal relationship cannot be demonstrated "if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances").

Here, this motion boils down to when the petition was placed in the facility's control for purposes of the mailbox rule. If the Court goes by petitioner's date of December 20, 2021, statutory tolling is sufficient and the action is timely filed. If the Court is to believe respondent, then the action is untimely by a week, and the only thing that would otherwise save petitioner is if equitable tolling were to apply. Respondent contends that

> petitioner attempted to present the petition with the disbursement

12

>    request form before January 19, 2022, [and] that prior attempt
>    should not govern for purposes of the statute of limitations because
>    [petitioner] did not follow the proper procedure that would ensure
>    that the petition would be mailed.  Because [petitioner] attached the
>    disbursement form to the envelope containing the petition,
>    petitioner was required to place the items on the ledge of his cell.
>    **It appears that he instead placed the envelope and form in the
>    central mailbag, which bypassed the prison's verification
>    procedures and, as a result, the business office returned the
>    envelope and form to [petitioner].**

Dkt. No. 10-1 at 9 (emphasis above).  Respondent relies on a decision whereupon this Court had to determine whether the prison mailbox rule applied to a complaint that was signed on one date and sent on another.  *See Brown v. Smithem*, No. 9:15-CV-1458 (BKS/CFH), 2017 WL 1155825, at *4 (N.D.N.Y. Feb. 28, 2017).  Ultimately, the presumption of the mailbox rule was defeated and the inmate's complaint was deemed untimely because the inmate readily admitted to "faili[ing] to append the proper amount of postage when he [initially] attempted to mail his complaint . . . [t]hus, the package containing his complaint was returned to him," after which the inmate created a new cover letter and sent in the complaint, with the correct postage.  *Id.*

      Here, the situation is patently different.  In the instant case, petitioner remains steadfast that he placed his petition and disbursement form properly into the facility's mail system on December 20, 2021, and never saw any of those documents again.  In essence, petitioner alleges that he is not sure where the delay occurred when the facility engaged in its mailing procedures; however, it was not attributable to his actions and, therefore, should not be charged against his limitations period.  One could better analogize this to the situations in *Diaz v. Kelly*, 515 F.3d 149 (2d Cir. 2008) and *Rose v. Riveria*, No. 1:08-CV-6027, 2009 WL 3152469, at *2 (S.D.N.Y. Sept. 29, 2009) where the courts noted how "it is a difficult, if not

13

impossible endeavor, to estimate how long a reviewing court will take to decide a particular motion," accordingly, there is "no point in obliging a pro se litigant to pester a state court with frequent inquiries as to whether a pending motion has been decided [or whether an amended petition needs to be filed]." *Rose*, 2009 WL 3152469, at *2 (quoting *Diaz*, 515 F.3d at 152). Once petitioner placed his form and petition in the facility's system, according to the procedure he avers was proper, there was really no way for him to know how long it would take for the process to conclude. Moreover, it would severely impair the facility's system to have constant inquiries about mailing updates. Once the documents left petitioner's control, he was at the mercy of the facility, which encapsulates the spirit behind the mailbox rule.

To be fair, petitioner's version of what transpired is also peppered with inconsistencies. Petitioner did not provide any reason for the mistaken dates that he included on his petition and affidavit of service, other than they were oversights. This is hard to reconcile with petitioner's detail-oriented arguments. Further, petitioner explicitly indicated that he predated his petition for a self-imposed deadline. This confirms the respondent's assertion that inmates do not necessarily file things on the date that they are signed, making application of the mailbox rule challenging.

However, the most compelling piece of petitioner's opposition to respondent's motion to dismiss was the Disbursement Request that he attached with his affidavit. According to the bolded text above, respondent contends that petitioner's form was viewed by the business office, who then stamped the form, sent the form and petition back to petitioner, and then petitioner placed it on his ledge for verification approval and signatures from the proper sources. However, petitioner's disbursement form shows approval/verification signatures without a stamp from the business office indicating that verification was required.

14

While petitioner's photocopy of his form is grainy, it is clear that initial stamp, which allegedly demonstrated that the error in the mailing process was petitioner's, was not there. This casts doubt on the verison of events proffered by respondent.

      Here, the Court has, on one side, the obligation to credit petitioner's assertions as true, particularly as corroborated by the day the petition was notarized and the date on the disbursement request. Further, there is petitioner's consistent engagement in litigation in both the state and federal courts seeking relief from his underlying criminal conviction. Then, on the other hand, there are petitioner's own filings to support the respondent's assertions that inmates predate documents and that those dates are not always consistent with when the documents are put in the mail or presented to the facility's officials for action. However, there is also the inconsistency between the sequence of events respondent proffers and the documentation provided by petitioner. In considering both sides, it would appear that there was some glitch with the mail system which, as petitioner's supporting affidavits demonstrate, was not an impossible or unheard of circumstance. Even the best procedures can fail. Consequently, given the deference accorded to a pro se petitioner and the factual inconsistencies which abound on both sides, it cannot be said that petitioner can prove no set of facts to demonstrate that his petition was timely or entitled to tolling. Therefore, respondent's motion to dismiss should be denied.

      The Court has identified missing information, such as the Appellate Division's decision for petitioner's application for leave to appeal the denial of his motion for renewal, that would further clarify whether the petition is ultimately timely or not. To the extent respondent wishes to further pursue dismissal of the petition as time-barred, respondent can revisit those arguments surrounding statutory and equitable tolling, along with addressing the merits of

petitioner's claims, in the complete response due in sixty (60) days.

## V. CONCLUSION

**WHEREFORE**, it is

**RECOMMENDED** that respondent's motion to dismiss, Dkt. No. 10, be **DENIED**; and it is further

**RECOMMENDED** that respondent file and serve an answer to the petition, and provide the Court with the relevant records,[6] within sixty (60) days of the date of any Decision and Order accepting this Report-Recommendation; and it is further

**RECOMMENDED** that petitioner may, but is not required to, file a reply within thirty (30) days of the filing date of respondent's answer.  If petitioner chooses to file a reply, it must not exceed fifteen (15) pages in length, excluding exhibits, and the arguments contained in the reply shall be limited to addressing the arguments raised by the respondent in his answer and memorandum of law in opposition to the petition.  This Court will not consider any new grounds for relief or other legal theories asserted by petitioner in his reply that were not previously asserted by him in his petition.  If petitioner fails to file a reply or a request for extension of time within thirty (30) days of the filing date of respondent's papers, he may forfeit his opportunity to file a reply; and it is further

**ORDERED** that the Clerk shall serve a copy of this Report-Recommendation and Order upon the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to

---

[6] The records must be arranged in chronological order, sequentially numbered, and conform fully with the requirements of Section XIII, Rule 1.1 of the Local Rules.  Respondent shall mail copies of any cited decisions exclusively reported on computerized databases, *e.g.* Westlaw, Lexis, but he need not file copies of those decisions with the Court.  N.D.N.Y. L.R. 7.1(b)(1).

16

file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).

Dated: September 26, 2022

      Binghamton, New York

*Miroslav Lovric*
Miroslav Lovric
U.S. Magistrate Judge